DANIEL G. KNAUSS
United States Attorney
District of Arizona

MICHAEL A. JOHNS
Assistant U.S. Attorney
State Bar no. 3803
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004-4408
Telephone: (602) 514-7566
Facsimile: (602) 514-7760
E-Mail: mike.johns@usdoj.gov
Attorneys for United States

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Jimmy C. Chisum,<br>    Plaintiff,<br>  v.<br>United States Department of the Interior,<br>    Defendant. | CIV-05-2830-PHX-JAT(**LEAD**)<br><br>**UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN RESPONSE TO CHISUM'S MEMORANDUM** |
| Jimmy C. Chisum,<br>    Plaintiff,<br>  v.<br>United States Department of the Interior, et al.,<br>    Defendants. | CIV-05-3616-PHX-JAT |
| United States of America,<br>    Plaintiff,<br>  v.<br>Jimmy C. Chisum, et al.,<br>    Defendants. | CIV-06-0770-PHX-JAT |

Defendant-Plaintiff, (United States of America), submits the following Memorandum of Points and Authorities in support of its Motion for Summary Judgment and in Response to Chisum's Motion for Summary Judgment.

**Response to Chisum's Memorandum**

Chisum essentially argues in his Motion (styled Motion for Summary Judgment by Affidavit and his Statement of Uncontested Facts) that the Department of the Interior, the BLM employees, and the U.S. Attorney have acted beyond their jurisdiction and authority as "federal zone agencies" limited to the boundaries of the seat of government by 4 U.S.C. §§ 71 and 72, or certain enclaves described in Article I, Section 8, Clause 17, or territories or possessions under Article IV, U.S. Constitution.

Chisum's jurisdictional arguments are neither new nor his own, and are frivolous. Chisum is a tax protestor serving 97 months on four counts of tax evasion, and he raised the same and similar arguments in his criminal case - all of which were rejected as frivolous. Attached is a copy of the Judgment (first 2 pages)(Exhibit A). Indeed, this argument had been expressly rejected in 1990 in *United States v. Collins,* 920 F.2d 619, 629 (10th Cir. 1990):

> "Dickstein's motion to dismiss advanced the hackneyed tax protester refrain that federal criminal jurisdiction only extends to the District of Columbia, United States territorial possessions and ceded territories. Dickstein's memorandum blithely ignored 18 U.S.C. § 3231 which explicitly vests federal district courts with jurisdiction over "all offenses against the laws of the United States." Dickstein also conveniently ignored article I, section 8 of the United States Constitution which empowers Congress to create, define and punish crimes, irrespective of where they are committed. *See United States v. Worrall,* 2 U.S. (2 Dall.) 384, 393, 1 L.Ed. 426 (1798) (Chase, J.). Article I, section 8 and the sixteenth amendment also empowers Congress to create and provide for the administration of an income tax; the statute under which defendant was charged and convicted, 26 U.S.C. § 7201, plainly falls within that authority. Efforts to argue that federal jurisdiction does not encompass prosecutions for federal tax evasion

2

have been rejected as either "silly" or "frivolous" by a myriad of courts throughout the nation.[Numerous following citations omitted]"

Nonetheless, Chisum continued to press his frivolous jurisdictional theories throughout his criminal prosecution, and is merely doing so here again. E.g., see his Criminal motions, Docket 84 (Exhibit B), Docket 86 (Exhibit C) which were denied by Order, Docket 87 (Exhibit D), and Criminal motions, Docket 108 (Exhibit E) and Docket 109 (Exhibit F) which were denied by Minute Orders on July 6, 2006. The Court can take judicial notice of these criminal proceedings and the Judgment.[1]

Furthermore, Chisum's frivolous jurisdictional arguments are well known, and are included in the IRS's catalogue of Frivolous Tax Arguments (Argument I(C)(2), page 20 on attached Exhibit H - available at WWW.IRS.gov).

In addition, the Ninth Circuit has rejected these same jurisdictional arguments. *In re Becraft*, 885 F.2d 547, 549 (9th Cir. 1989). Accord: *Hughes v. United States,* 953 F.2d 531, 542 (9th Cir. 1992):

> "First, the Hugheses argue that the IRS has no authority outside of Washington, D.C. To support this contention, they rely on **4 U.S.C. § 72**, which states that "[a]ll offices attached to the seat of governments shall be exercised in the District of Columbia, and not elsewhere, except as otherwise expressly provided by law." This section does not foreclose the exercise of authority by the IRS outside the District of Columbia."

---

[1] Chisum's wife may also be involved in these frivolous legal theories, if the attached e-mail from her, posted on the internet, is authentic - framing a hypothesis from which to argue that all Federal statutes are void (Exhibit G). While she may be affected by this litigation she is not a party.

In his Brief filed May 14, 2007, Chisum mentions the *Freeman* case. He lists the wrong case number. Chisum intervened as a defendant for a period of time when he claimed an ownership interest in the mining claims from which Clifford Freeman was evicted, pursuant to a valid Judgment which rejected frivolous arguments made by Freeman and Chisum. As reflected in the attached docket sheets for the consolidated cases *Freeman v. United States,* CIV-94-02397-PHX-PGR and *United States v. Freeman*, CIV-99-02083-PHX-PGR (District of Arizona) (Exhibit I), judgment was entered September 28, 2004, giving Freeman 90 days to vacate, remove his property and reclaim the lands - the same relief being sought in this case for a similar unlawful occupancy under the guise of the mining laws. The *Freeman* case has no particular relevance beyond confirming that the Court has jurisdiction, the Interior Department has authority to regulate conduct on public lands, and the U.S. Attorney's Office is authorized to prosecute these abusive trespass actions.[2]

---

[2] Other examples prosecuted by the undersigned counsel include eviction from a millsite occupied following retirement on which "ore" was occasionally processed at a meager return as health permitted. *United States v. Crawford*, CIV-74-753-PHX-WEC, (D. Ariz. December 30, 1976), *aff'd.* No. 77-1760 (9th Cir. March 28, 1978); Old log cabins occupied as a summer home with occasional gold placer mining held unlawful in *United States v. Long*, CIV-74-795-PCT-WEC, (D. Ariz. July 15, 1977); A watchman who looked after rarely used equipment was evicted in *United States v. Denham*, CIV-74-796-PHX-WEC, (D. Ariz. December 13, 1977), *aff'd.,* No. 78-1326 (9th Cir. July 16, 1980); In *United States v. Andy Synbad*, CIV-80-203-PHX-CLH (D. Ariz. March 11, 1982), *aff'd.*, No. 82-5324 (9th Cir. April 6, 1983), Synbad admitted he had not actually made a discovery, but believed he would find a valuable deposit at depth - the District Court held that his occupancy of a permanent residence on the claims was

(continued...)

In his Brief, Chisum tries to cobble together a silly theory challenging jurisdiction and authority because, in his opinion "The 'United States of America' And the 'United States' Are NOT One and the Same" (Brief at 4) and the United States District Courts" are not "district courts of the United States" (Brief at 10). The argument is frivolous.

Regarding his citations to law, in *Northern Pipeline Company v. Marathon Pipe Line Company,* 458 U.S. 50 (1982) the Court dealt with bankruptcy court jurisdiction under Title 11 of the U.S. Code - not relevant here. *American Insurance v. 356 Bales of Cotton,* dealt with territorial courts, admiralty and salvage. *Balzac v. Porto Rico,* 258 U.S. 298 (1922) dealt with territorial courts. Regarding statutes in Title 28, 28 U.S.C. § 530(B) deals with ethical standards for government attorneys. Section 542 authorizes appointment of Assistant U.S. Attorneys and Section 547 authorizes U.S. Attorneys to prosecute civil actions in which the United States is concerned. Section 132 creates district courts; Section 451 includes court definitions; Section 610 deals with the Administrative Office for U.S. Courts; Section 88 creates the judicial District of

---

[2](...continued)
unlawful, and ordered him to vacate and remove all improvements; In *United States v. Guzman Construction Company*, CIV-87-1353-PHX-RCB (D.Ariz. April 4, 1989), *appeal dismissed voluntarily* No. 89-15799 (Ninth Cir. April 17, 1991) the Court held that operation of a rock shop and allowing tourists to pick up Apache Tears from a Perlite deposit was not a mining operation or use reasonably incident thereto; In *United States v. Brings, et al*., CIV-91-1332-PHX-PGR (D. Ariz. 1993), *appeal dismissed*, CA No. 93-16122 (9th Cir. March 28, 1994), the United States obtained a judgment evicting the mining claimant and her lessee from public lands following a decision by the IBLA declaring the claim invalid.

Columbia and Section 199 creates the judicial District of Puerto Rico. These and other random citations provide no legal basis for Chisum's silly arguments challenging everyone's jurisdiction and authority.

Chisum has failed to raise any genuine issue of fact or law concerning the lawfulness of the two IBLA decisions or the authority of the Court to order his eviction from public lands.

## **United States' Memorandum**

The Court has jurisdiction to review the two IBLA decisions pursuant to 28 U.S.C. §1331 (Federal question). The waiver of sovereign immunity is the Administrative Procedures Act, which includes the standard of review applicable here at 5 U.S.C. 706:

> "To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
> * * *
> 2) hold unlawful and set aside agency action, findings, and conclusions found to be--
>     (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>     (B) contrary to constitutional right, power, privilege, or immunity;
>     (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>     (D) without observance of procedure required by law;
> * * *
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error."

The decisions of the IBLA that Chisum's occupancy is not incident to mining and

not authorized by the regulations, are fully supported by the record and must be affirmed.

The Court has jurisdiction of the eviction action brought by the United States pursuant to 28 U.S.C. § 1345 because the United States is the Plaintiff.

Article IV, Section 3 of the United States Constitution vests in Congress the power to dispose of or regulate the use of the public lands:

> The Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States.

This congressional power is generally unlimited. *Sierra Club v. Hickel*, 433 F.2d 24, 28 (9th Cir.) *aff'd*. 405 U.S. 727 (1972); *United States v. Osterlund*, 671 F.2d 1267, 1268 (10th Cir. 1982).

Congress may delegate the power to manage federal lands to the Executive Branch. E.g., *United States v. Grimaud*, 220 U.S. 506, 517 (1911) (livestock grazing in forest reserves); *United States v. Goldfield Deep Mines Co. of Nevada,* 644 F.2d 1307, 1310 (9th Cir.), *cert. denied*, 455 U.S. 907 (1982) (mining activities in forest reserves).

Determining the validity of mining claims on public lands was entrusted to the General Land Office in 1812 (2 Stat. 716) and transferred to the Department of the Interior on its creation in 1849 (9 Stat. 395); see 43 U.S.C. §2. Since that time the Interior Department has been granted plenary authority over the administration of public lands, and broad authority to issue regulations. E.g., 30 U.S.C. §22; 43 U.S.C. §1201; *Best v. Humbolt Placer Mining Co.*, 371 U.S. 334, 336 (1963); *Cameron v. United States*,

252 U.S. 450, 460-64 (1920); *United States v. Springer*, 491 F.2d 239, 241 (9th Cir.), *cert. denied*, 419 U.S. 834 (1974).

The Interior Department has been deciding unlawful occupancy cases under the mining laws for many years. E.g., *United States v. Paden*, 33 I.B.L.A. 380 (1978) (continued residence on a mill site while engaged in a full time job off the site, accompanied by sporadic "spare time" operations, held unlawful); *United States v. Wedertz*, 71 I.D. 368 (1964) (use of rehabilitated structure on millsite as a base for occasional prospecting activities held unlawful); *Alaska Copper Company*, 22 L.D. 128 (1903) (use of millsite claims to acquire possessory rights, without actual operations, held unlawful).

There need not be any specific reason, or proposed use of the land, in order to contest a claim. *Davis v. Nelson*, 329 F.2d 840, 842 (9th Cir. 1964)(Interior Department had authority to deal with 300 un-patented placer claims on public lands).

Before a patent is issued for a mining claim, the United States remains the owner of the land. The claimant can only use the surface of the claim, even if a valid discovery of valuable minerals has been found, for prospecting, mining and processing operations, and uses reasonably incident thereto. *Cole v. Ralph*, 252 U.S. 286, 294-307 (1920) (involved the rights of competing claimants); *Cameron v. United States*, 252 U.S. at 463 (livery stable in Grand Canyon National Park); *United States v. Bagwell*, 961 F.2d 1450, 1453 (9th Cir., 1992)(residential use of Millsite); *United States v. Curtis-Nevada Mines,*

8

*Inc.*, 611 F.2d 1277, 1281 (9th Cir. 1980) (exclusion of the public from 203 claims); *United States v. Richardson*, 599 F.2d 290, 293 (9th Cir.), *cert. denied*, 444 U.S. 1014 (1980) (unreasonable surface destruction); *United States v. Nogueira*, 403 F.2d 816, 825 (9th Cir. 1968) (residency); *Bales v. Ruch*, 522 F.Supp. 150, 157 (E.D. Ca. 1981) (Mobile home and other structures).

Mere prospecting will rarely, if ever, justify continuous residence in a substantial structure on an unpatented mining claim. E.g., *United States v. Allen*, 578 F.2d 236, 237-238 (9th Cir. 1978) (persons may not, under the guise of repeatedly locating mining claims, use public lands primarily for residential purposes)

Barring public entry on the surface of mining claims amounts to an unlawful occupation of public property within that proscribed in *Camfield v. United States*, 167 U.S. 518, 524 (1897). In *Camfield*, the Supreme Court upheld the Unlawful Inclosures Act of 1885, and delineated the federal proprietary rights over the public domain as follows:

> "While the lands in question are all within the state of Colorado, the Government has, with respect to its own lands, the rights of an ordinary proprietor, to maintain its possession and to prosecute trespassers."

In recognition of the abusive occupancy problem, Congress enacted the Act of July 23, 1955, 69 Stat. 367, 30 U.S.C. §601-615. Section 4(a) of that Act, 30 U.S.C. §612(a), confirming court decisions and congressional declarations of many decades, stated:

> "Any mining claim hereafter located under the mining laws of the United

9

> States shall not be used, prior to issuance of patent therefore, for any purposes other than prospecting, mining or processing operations and uses reasonably incident thereto."

Section 612(a) was merely declaratory of existing law restricting use of mining claims to prospecting and mining activity. As explained in Public Land Law Review Commission Report, <u>Legal Study of the Nonfuel Mineral Resources</u>, at 992:

> "[a]lthough some members of Congress appear to have been under the impression that this section was an amendment of the mining laws, it is merely a codification of the judicial and administrative interpretation of those laws."

*Accord*: *United States v. Springer*, (*Springer I*), 321 F.Supp. 625, 627 (C.D. Ca.), *aff'd* 478 F.2d 43 (9th Cir. 1972):

> "Prior to 1955 it would seem clear that a mining claimant could not use the claim for any purposes other than mining purposes and uses reasonably incident to mining. . ."

In *United States v. Nogueira*, 403 F.2d at 823, the Court explained:

> "The Act of July 23, 1955, 69 Stat. 368, 30 U.S.C. §612, quoted supra, expressed the policy of Congress to confine the use of mining claims for mining purposes, and was directed at abuses which had grown up in the use of such claims for other than mining purposes. The Legislative history demonstrates the purpose of the Act, and specifically refers to one of the abuses as the acquisition of mining claims for "residence or summer camp purposes." H.R. 730 84th Cong. 1st Sess. (1955), p. 6; S.R. 554, 84th Cong. 1st Sess. (1955). U.S. Code Congressional and Administrative News 1955, Vol. 2, p. 2474 at 2479."

The Court went on to hold that a district court may determine the lawfulness of occupancy without regard to the validity of the mining claim itself. As pointed out in *Thomas v. Morton*, 408 F.Supp. 1361, 1370 (D. Ariz.) *aff'd*, 552 F.2d 871 (9th Cir. 1977):

> "The general public, and not the prospector or mining claimant has the paramount interest to be considered in preserving and protecting public lands or public interest in lands from being subjected to invalid or unwarranted claim or encroachment."

Similarly, in *United States v. Coleman*, 390 U.S. 599, 602 (1968), the Supreme Court stated:

> "Under the mining laws Congress has made public lands available to people for the purpose of mining valuable mineral deposits and not for other purposes [footnote omitted]."

The Federal Land Policy and Management Act (FLPMA) section 303(b), 43 U.S.C. 1733(b), provides, in pertinent part, "[a]t the request of the Secretary, the Attorney General may institute a civil action in any United States District Court for an injunction or other appropriate order to prevent any person from utilizing public lands in violation of regulations issued by the Secretary under this Act." 43 C.F.R. 3715.8 provides that an action may be brought under FLPMA section 303(b) for violation of orders issued under 43 C.F.R. Subpart 3715.

The BLM explained its statutory authority to Chisum in its letter dated August 28, 2002 (AR 3616, V I, D 15). Chisum's self-serving efforts to convert his run-of-the-mill abuse of the mining laws into a "cause" is nothing more than self-agrandisement. His ongoing occupation and surface management violations constitute a garden variety

trespass which should be terminated.[3]

The Orders issued by BLM contain the appropriate remedies set forth in the regulations. 43 C.F.R. § 3715.4-3 provides:

> "If BLM determines that all or any part of your existing use or occupancy is not reasonably incident:
>
> (a) BLM may order a suspension or cessation of all or part of the use or occupancy under § 3715.7-1;
>
> (b) BLM may order the land to be reclaimed to its satisfaction and specify a reasonable time for completion of reclamation under 43 CFR part 3800 * * * * "

43 C.F.R. § 3715.7-2 provides:

> "If you do not comply with a BLM order issued under § 3715.7-1, the Department of the Interior may request the United States Attorney to

---

[3] It also constitutes criminal trespass as described in 43 C.F.R. § 3715.8:

"What penalties are available to BLM for violations of this subpart?

The penalties for individuals and organizations are as follows:

(a) Individuals. If you knowingly and willfully violate the requirements of this subpart, you may be subject to arrest and trial under section 303(a) of FLPMA (43 U.S.C. 1733(a)) and/or section 4 of the Unlawful Occupancy and Inclosures of Public Lands Act (43 U.S.C. 1064). If you are convicted, you will be subject to a fine of not more than $100,000 or the alternative fine provided for in the applicable provisions of 18 U.S.C. 3571, or imprisonment not to exceed 12 months, or both, for each offense.

(b) Organizations. If an organization or corporation knowingly or willfully violates the requirements of this subpart, it is subject to trial and, if convicted, will be subject to a fine of not more than $200,000, or the alternative fine provided for in the applicable provisions of 18 U.S.C. 3571."

institute a civil action in United States District Court for an injunction or order to prevent you from using or occupying the public lands in violation of the regulations of this subpart. This relief may be in addition to the enforcement actions described in § 3715.7-1 and the penalties described in § 3715.8."

43 C.F.R. § 3715.5-1 provides:

"Unless BLM expressly allows them in writing to remain on the public lands, you must remove all permanent structures, temporary structures, material, equipment, or other personal property placed on the public lands during authorized use or occupancy under this subpart. You have 90 days after your operations end to remove these items. * * * "

43 C.F.R. § 3715.5-2 provides:

"Any property you leave on the public lands beyond the 90-day period described in § 3715.5-1 becomes property of the United States and is subject to removal and disposition at BLM's discretion consistent with applicable laws and regulations. You are liable for the costs BLM incurs in removing and disposing of the property."

## CONCLUSION

The United States seeks an order consistent with the regulations 1) requiring Chisum, his wife and daughter, and anyone else associated with him to vacate and reclaim the lands within 90 days, 2) forfeiting ownership of any property left behind, 3) authorizing the U.S. Marshals Service to enforce the order if necessary, and related relief set forth in the proposed Order lodged herewith.

Respectfully submitted this 29th day of May, 2007.

                                       DANIEL G. KNAUSS
                                       United States Attorney
                                       District of Arizona

                                       *s/Michael A. Johns*

                                       MICHAEL A. JOHNS
                                       Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2007, I served the attached document by mail, on the following, who are not registered participants of the CM/ECF System:

Jimmy C. Chisum
No. 84388-008
FCI LaTuna
Federal Correctional Institution
P.O. Box 8000
Anthony, TX 88021

  *s/S. Guerin*
_____
Office of the U.S. Attorney