**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jimmy C. Chisum,<br><br>    Plaintiff,<br><br>vs.<br><br>United States Department of the Interior, et al.,<br><br>    Defendants.<br>_____<br>United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Jimmy C. Chisum, et al.,<br><br>    Defendants.<br>_____ | CV 05-2830-PHX-JAT (Lead)<br>CV 05-3616-PHX-JAT (Cons)<br>CV 06-0770-PHX-JAT (Cons)<br><br>**ORDER** |

      Pending before the Court are Mr. Chisum's Motion for Summary Judgment (Doc. # 22), the United States's Cross Motion for Summary Judgment (Doc. #26), Mr. Chisum's Motion to Strike All Pleadings in Opposition to Summary Judgment and for Default (Doc. #30), and the United States's Supplemental Memorandum Concerning Due Process (Doc. #33). The Court now rules on the motions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In November of 1994, the Bureau of Land Management (BLM) investigated a complaint from a citizen regarding Mr. Chisum and his family's occupation of public lands pursuant to unpatented mining claims. On December 13, 1994, BLM issued a Notice to Chisum explaining that his residential occupancy and surface disturbance violated applicable regulations. The violations included: blading a road, which destroyed native vegetation; occupied mobile homes and a motor home; trenching; installation of a septic system; fenced in areas containing turkeys, chickens, and geese; penned goats; and various trailers and vehicles. Mr. Chisum responded to the Notice with various arguments regarding the authority of the BLM agents, the BLM, and the United States. Chisum admitted that he, his wife Donna, his daughter, and others were occupying the mining claims.

A March 1, 2001 Field Inspection showed that the mining claims were still being occupied by the Chisums without any mining activity occurring. Field agents inspected the occupancy again on March 13, 2002, and took photographs. Mr. Chisum again questioned the authority of the BLM, the United States, and its officers to manage the public lands. The BLM performed another field inspection with photographs on September 18, 2002.

When questioned about his mining activity, Mr. Chisum claimed that he was testing a new theory for extracting gold using magnetic resonance to liquify the gold and bring it to the surface. The theory had not met with any success. Nor had Mr. Chisum filed a Mining Notice or Plan of Operation with the BLM with regard to his mining claims.

The BLM sent decision letters of Nonconcurrence and Permanent Cessation Order for the Halcyon Lode, Mommy's Treasure, and Daddy's Treasure mining claims. The Interior Board of Land Appeals (IBLA) upheld those decisions over the written protestations of Mr. Chisum. The IBLA held that the Chisums' occupancy and use of the mining claims was not incident to mining activity as required by applicable "use and occupancy regulations," 43 C.F.R. §§3715, 3715.2, 3715.2-1. The IBLA also noted that Chisum had failed to file a notice or otherwise comply with surface management regulations as required to conduct mining

operations, 43 C.F.R. 3809.

Mr. Chisum, who currently is serving approximately eight years in prison for tax evasion, filed two separate cases appealing from the IBLA's decisions. The United States of America has filed a separate action against Mr. Chisum for use of public lands in violation of regulations and for unlawful occupancy. The United States asks the Court for declarative and injunctive relief to enforce the decisions of the BLM Phoenix office, as affirmed by the IBLA. Both Mr. Chisum and the United States have moved for summary judgment.

**II. ANALYSIS AND CONCLUSION**

Mr. Chisum's motion for summary judgment does not even discuss whether his residential occupancy of the mining claims was incidental to mining operations, as required by regulations. Instead, his motion focuses on frivolous arguments regarding the proper extent of authority of the BLM, the IBLA, the Attorney General's Office, the United States, and this Court. Further, Mr. Chisum has not followed the rules for filing and supporting a motion for summary judgment. His Statement of Uncontroverted Facts does not cite to record evidence as required by local rule. Rather, the Uncontroverted "Facts" basically recite Mr. Chisum's unorthodox legal theories. Procedural deficiencies aside, Mr. Chisum's motion for summary judgment fails because all parties involved had and/or have the requisite authority.[1]

**A. Authority**

The United States Constitution gives Congress the generally unlimited right to regulate all public lands, including mines. *Sierra Club v. Hickel*, 433 F.2d 1267, 1268 (9th Cir. 1970). Congress has delegated this power to the Secretary of the Interior. 43 U.S.C. §1457; *Davis v. Nelson*, 329 F.2d 840, 843 (9th Cir. 1964). More specifically, the Bureau of Land Management, an agency under the Department of the Interior, has the power to regulate the location, occupation, and patenting of mining claims on public lands. *Davis*, 329 F.2d at 843. This authority is plenary. *Id.* (quoting *Best v. Humboldt Placer Mining Co.*, 371 U.S. 334,

---

[1]Despite Mr. Chisum's protestations to the contrary, the federal government has the authority to act outside the District of Columbia and "territorial" areas.

- 3 -

336 (1963)). Plaintiff does not have a legitimate argument that the Department of the Interior, through the BLM and IBLA, lacks the authority to investigate and regulate his mining claims.

Nor does Plaintiff have a plausible argument that the Attorney General does not have the authority to represent the United States in this action. The Attorney General's office has the statutory authority to prosecute civil actions that concern the United States. 28 U.S.C. §547. More importantly for this case, 43 U.S.C. §1733(b) provides that the Attorney General, at the request of the Secretary of the Interior, may institute a civil action for injunctive or other relief to prevent the unauthorized use of public lands. The Attorney General certainly has the right to represent the government in this case.

Finally, this Court has jurisdiction over the case. The Court has jurisdiction to review IBLA decisions pursuant to 28 U.S.C. §1331. *Andrus v. Charlestone Stone Products Co.*, 436 U.S. 604, 608 n.6 (1978). The Court also has jurisdiction over all civil actions, suits, or proceedings commenced by the Untied States or any agency or officer thereof. 28 U.S.C. §1345. The Court unquestionably has the power to decide this consolidated case.

**B. IBLA Decision**

**Standard of Review**

The Court's review of an IBLA decision is limited. *Akootchook v. U.S.*, 271 F.3d 1160, 1164 (9th Cir. 2001). The Court will reverse only "if the decision is arbitrary, capricious, not supported by substantial evidence, or contrary to law," and it "carefully searches the entire record to determine whether it contains such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and whether it demonstrates that the decision was based on a consideration of relevant factors." *Id*.

By statute, any mining claim located after 1955, "shall not be used, prior to issuance of patent therefore, for any purposes other than prospecting, mining or processing operations and uses reasonably incident thereto." 30 U.S.C. §612(a); *see also* 43 C.F.R. §3715.2. Congress enacted the statute to confine the use of mining claims to mining purposes only and to curb occupancy abuses that had developed. *United States v. Nogueira*, 403 F.2d 816, 823

(9th Cir. 1968). Mere prospecting of an unpatented mining claim will rarely, if ever, justify continuous residence in a substantial structure. *United States v. Allen*, 578 F.2d 236, 237-38 (9th Cir. 1978). This Court has the power to determine the lawfulness of Chisum's occupancy without regard to the validity of the mining claim itself. *Nogueira*, 403 F.2d at 825.

In his appeal from the IBLA decision, Mr. Chisum argues, among other things, that the federal government can act only within a narrow zone, that the BLM agents had no authority to investigate his mining claims and order him to vacate, and that the IBLA had no authority to affirm that decision. But he does not argue that his occupancy of the claims was "reasonably incident" to mining activities. The administrative record demonstrates that he cannot successfully make that argument.

Mr. Chisum, his family, and others basically have built a compound on the mining claims – complete with mobile homes, trailers, a septic system, and goats, geese, and chickens. Practically, the only thing missing from the occupancy was any type of significant mining activity or any valuable minerals needing protection. BLM made several visits to the claims and took photographs and never discovered any discernible mining activity or preparation for mining activity. Mr. Chisum told the BLM that he was testing a new theory for extracting gold using magnetic resonance to liquify the gold and bring it to the surface. The theory had not produced any positive results, and geologist Jeff Garrett found the theory unconventional, not proven, and highly suspect.

The administrative record supports the BLM and IBLA's decision that Mr. Chisum's surface occupation of the claims was not reasonably incident to mining activity. In addition, Mr. Chisum failed to file a required Notice and otherwise comply with surface management regulations, 43 C.F.R. §§3809.21 & 3809.300-336. As such, the BLM had the authority to order Mr. Chisum to cease all use of the property and to reclaim the surface. *See, e.g.,* 43 C.F.R. §§3715.4-3 & 3715.7-2. The Court therefore affirms the decisions of the IBLA in *Rivers Edge Trust, Jimmy Chisum, Trustee,* 166 IBLA 297 (2005) (Halcyon Lode Mining Claim) and in AZA-28895, IBLA dockets 2003-152 and 2005-272 (October 18, 2005)

(Mommy's Treasure and Daddy's Treasure Association Placer Claims).

Mr. Chisum has not created a question of fact on the government's case for injunctive relief. He has cited no record evidence for the proposition that his occupancy is reasonably incident to a mining operation. All the record evidence indicates that Mr. Chisum and his family maintained a permanent residence on the claims without engaging in any significant mining activity. Because any use of an unpatented mining claim that is not reasonably incident to a mining operation is unlawful, 30 U.S.C. §612(a), the United States is entitled to injunctive relief. *See Nogueira*, 403 F.2d at 825 ("Thus the government can prohibit occupation of a mining claim . . . where the land is not being used for mining purposes, regardless of whether or not the claim was valid.").

### C. PROCEDURAL DUE PROCESS

Mr. Chisum basically has alleged two theories in his Complaints: 1) that the BLM and the IBLA acted without authority and improperly in finding that he and his associates must clear off the inactive mining claims and 2) that the IBLA issued its decisions in denial of due process.[2] The Court has held that the administrative record amply supports the IBLA decisions and that the United States has the right to order Mr. Chisum to end his nonconforming use and reclaim the land. The Court now will turn to Mr. Chisum's procedural due process claim.

Mr. Chisum alleged that the IBLA denied him due process by not granting him an evidentiary hearing before issuing its decision. The record reveals that although the BLM made several visits to the mining claims and spoke with Mr. Chisum and that Mr. Chisum submitted multiple written objections, no hearing took place. The government has not argued that Mr. Chisum failed to request a hearing. The Court therefore will assume for the purposes of this Order that Mr. Chisum properly made such a request.

The pertinent administrative regulations allow for an appeal from the BLM's

---

[2] Mr. Chisum makes other statements in his Complaint, but these "statements," for lack of a better word, do not rise to the level of stating a valid cause of action.

- 6 -

determination of nonconforming use to the IBLA. 43 C.F.R. §3715.9. The IBLA then has the discretion to order a hearing before an ALJ on any issues of fact. 43 C.F.R. §4.415.[3] No statute or regulation requires an evidentiary hearing on the issue of whether occupancy is incident to mining.

The IBLA has considerable discretion to order a hearing. *Catron v. Babbitt*, 955 F.Supp. 627, 633 (W.D. Va. 1997). But the IBLA should grant a hearing when significant factual or legal issues remain and the record without a hearing would not suffice for resolving the issues. *Stickelman v. U.S.*, 563 F.2d 413, 417 (9th Cir. 1977). When no fact issues exist, the IBLA does not need "to perform [a] meaningless task[]," and hold a plenary, adversary administrative proceeding involving evidence, cross-examination of witnesses, etc. *U.S. v. Consol. Mines & Smelting Co.*, 455 F.2d 432, 453 (9th Cir. 1971).

The Court finds that remanding to the IBLA for a hearing would accomplish nothing. No significant factual or legal issues remain in this case. Both at the administrative level and before this Court, Mr. Chisum has argued that the federal government has no right to the public land and that its agents cannot tell him what to do with his mining claims. But he has never presented any evidence or arguments to refute the BLM and IBLA's findings of nonconforming use. He has conceded that no significant mining activity was taking place on his claims. Mr. Chisum simply maintains that the federal government has no business messing with his mining operations or lack thereof. The Court finds that in this case, where the appellant has presented no significant factual or legal issues, the IBLA did not abuse its

---

[3]"Either an appellant or an adverse party may, if he desires a hearing to present evidence on an issue of fact, request that the case be assigned to an administrative law judge for such a hearing. Such a request must be made in writing and filed with the Board within 30 days after answer is due and a copy of the request should be served on the opposing party in the case. The allowance of a request for hearing is within the discretion of the Board, and the Board may, on its own motion, refer any case to an administrative law judge for a hearing on an issue of fact. If a hearing is ordered, the Board will specify the issues upon which the hearing is to be held and the hearing will be held in accordance with §§4.430 to 4.439, and the general rules in Subpart B of this part." 43 C.F.R. §4.415.

- 7 -

discretion or deny Mr. Chisum due process by not holding an oral, evidentiary hearing. *See Cumberland Reclamation Co. v. Secretary, Dept. of the Interior*, 925 F.2d 164, 168 (6th Cir. 1991).

The Court is aware of *Adams v. Witner*, 271 F.2d 29 (9th Cir. 1958) and *Collord v. U.S. Dept. of the Interior*, 154 F.3d 933 (9th Cir. 1998), which relied in part on *Adams*. The *Adams* case involved a jurisdictional question. The *Adams* court held that the Administrative Procedure Act applied to the case and that the district court had jurisdiction to review the agency decision. *Adams*, 271 F.2d at 33. In reaching that holding, the court stated, "There is no statute relative to hearings such as that here involved. But as the appellant's right to his mining claims was a property right, it follows that the requirements of due process necessitate that he have a hearing before he can be deprived of that property right." *Id*.

The *Adams* case is distinguishable in two respects. First, the underlying agency decision in *Adams* dealt with a mining patent application and the contest thereof, not a determination of whether certain uses of an unpatented mining claim were reasonably incident to a mining operation. The regulations provide different rules and procedures for the different interests involved in those proceedings. Second, the *Adams* opinion does not indicate a complete lack of factual or plausible legal issues, like in the present case.

Similarly, *Collord* is distinguishable. *Collord* involved contest proceedings over the validity of a claim and a patent application. 154 F.3d at 934. Unlike the regulations at issue here regarding conforming use, the regulations pertinent to the contest proceedings in *Collord* required a formal administrative hearing. *Id*. at 935. Moreover, the actual holding of the *Collord* case dealt with whether the Equal Access to Justice Act, 5 U.S.C. §504, applied to the claim owners' petition for fees, not a procedural due process argument.

We agree with the Ninth Circuit that due process does not require an oral evidentiary hearing where, as here, "there is no record evidence showing, nor reason to believe that [Mr. Chisum] [is] . . . unable to pursue [his] claims by filing written pleadings . . . ." *Clouser v. Espy*, 42 F.3d 1522, 1540 (9th Cir. 1994). That is especially true where, because the mining

- 8 -

claimant has presented no issues of fact and no colorable legal arguments, an oral hearing would place an undue burden on the government's resources. *Cf. Silas v. Babbitt*, 96 F.3d 355, 358 (9th Cir. 1996) ("Requiring an oral hearing in those cases where the face of the application shows that the [land allotment] applicant is not qualified would place an undue burden on the government's resources."). The Court holds that under the circumstances of this case, Mr. Chisum has not demonstrated that the BLM's detailed administrative procedures, which include provisions for an administrative appeal, do not conform with procedural due process. *See Clouser*, 42 F.3d at 1540-41.

The Court upholds the decisions of the BLM and the IBLA. The Court affirms that the administrative record supports their findings that Mr. Chisum's residential occupancy of the mining claims was not reasonably incident to a mining operation. Additionally, the United States has demonstrated that Mr. Chisum's use violates the statutes and regulations and that the government has the right to force Mr. Chisum to abandon that use and reclaim the area. The Court further finds that the detailed administrative procedures available to Mr. Chisum provided him with due process. The Court will therefore deny Mr. Chisum's motion for summary judgment and grant the government's cross motion for summary judgment.

### D. MOTION TO STRIKE

Mr. Chisum has filed a Motion to Strike All Pleadings in Opposition to Summary Judgment and for Default (Doc. #30). Mr. Chisum makes the same lack of authority arguments in support of his motion to strike that he made in his motion for summary judgment. The Court already has rejected those arguments. Mr. Chisum has not made any other valid arguments for striking the United States's responses or for entering default. The Court therefore will deny the motion to strike and for default.

Accordingly,

IT IS ORDERED DENYING Mr. Chisum's Motion for Summary Judgment (Doc. # 22).

- 9 -

IT IS FURTHER ORDERED DENYING Mr. Chisum's Motion to Strike All Pleadings in Opposition to Summary Judgment and for Default (Doc. #30).

IT IS FURTHER ORDERED GRANTING the United States's Cross Motion for Summary Judgment (Doc. #26).

IT IS FURTHER ORDERED that:

1. Mr. Jimmy C. Chisum, individually and as Trustee, and any and all persons acting in concert with him or in association with him, are permanently enjoined from occupying the lands that are the subject of this action, including the Mommy's Treasure and Daddy's Treasure Association Placer Claims , and the Halcyon Lode Mining Claim;

2. Mr. Jimmy C. Chisum, his wife Donna Chisum, his daughter, and any other persons occupying the subject lands shall vacate the subject lands within 90 days of the date of this Order;

3. Mr. Jimmy C. Chisum, his wife, his daughter, and any other persons occupying the subject property shall cause all improvements, structures, trailers, mobile homes, vehicles, equipment, fences, utilities, tools, fuels, livestock, fowl, pets and all other personal property to be removed from the subject lands within 90 days from the date of this Order.  The United States shall have title and ownership of any improvements, structures, trailers, mobile homes, vehicles, fences, utilities, tools, livestock, fowl, pets and all other personal property that is not removed from the subject lands within said 90 days, and may remove and dispose of same without any liability, and recover the cost of removing and disposing of same from Mr. Jimmy C. Chisum;

4. Mr. Jimmy C. Chisum shall cause the subject lands to be reclaimed to a reasonably natural condition within 90 days from the date of this Order.  After 90 days from the date of this Order, the United States may complete any uncompleted reclamation needed to restore the subject lands to a reasonably natural condition, and recover the costs from Mr. Chisum; and

5\. If any person continues to occupy the subject lands beyond the said 90 days, the United States may apply for a Writ to issue to the United States Marshal or any Deputy United States Marshal to effectuate the terms of this Order.

DATED this 31st day of October, 2007.

_James A. Teilborg_
United States District Judge